# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER LYNETTE LANE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 5:16-CV-0855-VEH** |
| | ) | |
| **NANCY A. BERRYHILL, ACTING** | ) | |
| **COMMISSIONER, SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant**. | ) | |

---

## <u>MEMORANDUM OPINION</u>

Plaintiff Jennifer Lynette Lane ("Ms. Lane") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"),[1] who denied her application for Disability Insurance Benefits ("DIB"). Ms. Lane timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C.

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

§ 405(g).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Lane was 33 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 46). She has completed the twelfth grade and two years of college. *Id.* Her past work experience includes employment as a secretary, office manager, and bank teller. (Tr. 46-47). Ms. Lane initially claimed she became disabled beginning September 15, 2011. (Tr. 163-64). Her last period of work ended on October 20, 2011. (Tr. 349).

Ms. Lane first filed for DIB on February 26, 2012. (Tr. 109). Her claim was initially denied on May 14, 2012. *Id.* She filed a request for a hearing on May 25, 2012. (Tr. 105). Ms. Lane voluntarily dismissed her request for a hearing on October 5, 2012. *Id.* On February 14, 2014, Ms. Lane protectively filed her second Title II application for a period of disability and DIB. (Tr. 107). Ms. Lane amended the onset date of her disability to February 14, 2013. (Tr. 185) On May 7, 2014, the Commissioner denied Ms. Lane's application. (Tr. 125-29). Ms. Lane timely filed a written request for a hearing on May 19, 2014. (Tr. 130-31). The ALJ held the hearing on September 11, 2014, in Cullman, AL. (Tr. 17). On January 26, 2015, the ALJ issued an unfavorable decision concluding that Ms. Lane was not disabled and denying her DIB claim. (Tr. 14-34). Ms. Lane timely petitioned the Appeals Council

to review the decision on February 23, 2015. (Tr. 12). On April 27, 2016, the Appeals Council issued a denial of review on Ms. Lane's claim. (Tr. 1-3).

Ms. Lane filed a Complaint with this court on May 25, 2016, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on August 25, 2016. (Doc. 3). Ms. Lane filed a supporting brief (doc. 8) on October 25, 2016, and the Commissioner responded with an opposing brief (doc. 9) on November 21, 2016. Ms. Lane then followed with a reply (doc. 10) to the Commissioner's brief on December 8, 2016.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial

evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological

---

[2] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of June 15, 2017.

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.      [Ms. Lane] meets the insured status requirements of the Social Security Act through the date of this decision. (Tr. 19).

2.      [Ms. Lane] has not engaged in substantial gainful activity since February 14, 2013, the amended alleged onset date (20 C.F.R. § 404.1571 et seq.). (Tr. 19).

3.      [Ms. Lane] has the following severe impairments: degenerative disc disease of the lumbar spine at L4-5, fibromyalgia, chronic fatigue syndrome verses dysautonomia, a major depressive disorder, and an anxiety disorder (20 C.F.R. § 404.1520(c)). (Tr. 19).

4.      [Ms. Lane] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 19-21).

5.      After careful consideration of the entire record, [the ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). She can occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. She can stand and/or walk in combination, with normal breaks, for at least six hours during an eight-hour workday. [Ms. Lane] can occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds. The claimant can occasionally balance stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme heat,

extreme cold, humidity and working in areas of vibration. [Ms. Lane] should avoid exposure to industrial hazards including working at unprotected heights and working in close proximity to moving dangerous machinery. She can perform simple routine tasks requiring no more than short simple instructions and simple work-related decision making with few work place changes. She can have occasional interactions with co-workers and supervisors, but no interactions with members of the general public. (Tr. 21-28).

6.    [Ms. Lane] is unable to perform any past relevant work (20 C.F.R. § 404.1565). (Tr. 28).

7.    [Ms. Lane] was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. § 404.1563). (Tr. 28).

8.    [Ms. Lane] has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564). (Tr. 28).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Ms. Lane] is "not disabled," whether or not [she] has transferable job skills. *See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 28).

10.   Considering [Ms. Lane's] age, education, work experience, and residual functional capacity, there are jobs that exist in the significant numbers in the national economy that [she] can perform (20 C.F.R. §§ 404.1569 and 404.1569 (a)). (Tr. 28-29).

11.   [Ms. Lane] has not been under a disability, as defined in the Social Security Act, from February 14, 2013, through the date of this decision (20 C.F.R. § 404.1520(g)). (Tr. 29).

# ANALYSIS

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Lane urges this court to reverse the Commissioner's decision to deny her benefits on two grounds: (1) the ALJ improperly discredited Ms. Lane's subjective testimony and (2) the ALJ improperly rejected the medical opinion of Ms. Lane's treating physician, Dr. Ann Still. (Doc. 8 at 1). For the reasons detailed below, the court agrees with Ms. Lane that the ALJ committed reversible error and directs the Commissioner to award disability benefits to her.

I.    **The ALJ's Credibility Finding Failed To Follow the Eleventh Circuit Standard in Rejecting Ms. Lane's Pain and Other Subjective Symptoms Caused by Fibromyalgia and Was Not Based on Substantial Evidence.**

The pain standard "applies when a disability claimant attempts to establish a disability through [her] own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This standard requires "evidence

of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). A claimant's statements about pain or other symptoms do not alone establish disability. *See* 20 C.F.R. § 404.1529(a) ("However, statements about [the claimant's] pain or other symptoms will not alone establish that you are disabled."); *accord* 20 C.F.R. § 416.929(a) (same). Rather, "there must be medical signs and laboratory findings which show that [claimants] have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id.* Even if a claimant is able to show medical impairments that could reasonably be expected to produce the alleged symptoms, the Commissioner "must then evaluate the intensity, persistence of [the claimant's] symptoms so that [the Commissioner] can determine how [the claimant's] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1).

The ALJ may reject a claimant's complaints of pain if he finds them not credible. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.").

However, if the ALJ discredits a claimant's testimony regarding the severity of her symptoms, that determination must be supported by substantial evidence. *Id.*; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (explaining that the Commissioner's factual findings must be supported by substantial evidence).

Furthermore, the ALJ may not reject the claimant's statements as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p ("[T]he effect the symptoms have on [the claimant's] ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").[3] Instead, the ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3).

This other evidence includes "any symptom-related functional limitations and restrictions which [the claimant], [the claimant's] treating or non-treating source, or other persons report, which can be reasonably accepted as consistent with the objective medical evidence and other evidence[.]" *Id.* Relevant factors that may show

---

[3] Although they lack the force of regulations, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

the effect of a claimant's symptoms on her functional abilities include: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's pain; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the pain; and other treatments or measures taken by the claimant, not including medication. *Id.* Using these other factors, the ALJ must show substantial evidence supporting [her] attempt to discredit the claimant's pain testimony. *Id.*

Applying the Eleventh Circuit pain standard to this case, the ALJ found that while Ms. Lane's medical record supported finding that her "medically determinable impairments could reasonably be expected to cause some of her alleged symptoms … [her] statements concerning the intensity, persistence, and limiting effects of her symptoms [we]re not entirely credible." (Tr. 23). The ALJ further found that:

> the totality of the objective evidence of record clearly indicates that despite many subjective or somatic complaints and allegations, repeated providers have been able to find little objective findings, despite multiple diagnostic test[s], as to a physiological basis of her complaints with no evidence of ongoing treatment in more recent years for the most serious of her alleged conditions, specifically the dysautonomia or [her] colon problems-as she reported at the hearing. Thus leading the [ALJ] to conclude the objective medical evidence of record does not support [Ms. Lane's] subjective allegations.

(Tr. 27 (emphasis added)). The ALJ's credibility determination was based on a lack of objective medical evidence, deviation from prescribed medical treatment, and

inconsistencies between Ms. Lane's testimony and her level of daily activity. (Tr. 23-27).

The ALJ incorrectly applied the legal standard and relied on evidence insufficient to discredit Ms. Lane's subjective testimony pertaining to fibromyalgia. An ALJ's credibility finding may be reversed when the court finds no indication of the proper legal standard being applied to a specific impairment. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (reversing the ALJ's decision because he only considered impairments that did not satisfy the standard but made no mention of two of claimant's conditions that would have satisfied the pain standard). The pain standard also applies to complaints of subjective conditions other than pain. *Id*.

In the present case, the ALJ found Ms. Lane's fibromyalgia to be a condition capable of producing some degree of pain and other disabling symptoms, but not at the level of her claimed severity. (Tr. 23). In reaching this conclusion, the ALJ provided explicit reasoning, but improperly considered the lack of objective medical evidence and discrepancies within the medical record relating to Ms. Lane's other impairments (dysautonomia, colon problems) to discredit the severity of her subjective testimony relating to fibromyalgia. (Tr. 27). The ALJ also misconstrued Mr. Lane's record of treatment for fibromyalgia. The ALJ further relied upon inadequate daily activities to undermine Ms. Lane's credibility. Therefore, the ALJ

failed to properly apply the pain standard specifically to Ms. Lane's fibromyalgia claim. Further, the ALJ's failure to articulate adequate reasons to discount Ms. Lane's subjective testimony pertaining to fibromyalgia requires that the testimony be accepted as true. *Wilson v. Barnhart*, 284 F.3d at 1225.

A.  **The ALJ improperly relied upon a lack of objective medical evidence to discredit Ms. Lane's subjective symptoms related to her severe impairment of fibromyalgia.**

The ALJ relied on diagnostic medical examinations to discredit Ms. Lane's testimony regarding fibromyalgia. (Tr. 27). The ALJ found that all of Ms. Lane's diagnostic scans and studies were "normal or showed only slight abnormalities, including EMG studies, CT scans, x-rays, and repeated lab work." *Id.* Yet, the objective medical evidence referenced by the ALJ is insufficient to discredit Ms. Lane's disability claim premised upon fibromyalgia because that condition is not detectable through ordinary diagnostic testing.[4] *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing *Stewart v. Apfel*, 245 F.3d 793 (11th Cir. 2000)) (table of decisions without reported opinions).[5] Fibromyalgia is almost entirely

---

[4]  Additionally, the Eleventh Circuit has made it clear that an ALJ commits reversible error if she relies solely upon a lack of objective medical evidence to discredit a claimant's subjective allegations. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (It is "well established that reversible error exists if complaints of subjective pain are disregarded simply because they are not supported by objective clinical and laboratory medical findings.").

[5]  In the Eleventh Circuit, unpublished decisions are not binding precedent, but they may be cited as persuasive authority. 11th Cir. R. 36-2.

subjective and requires alternative, medically-accepted clinical techniques to show the existence of an impairment. *Moore*, 405 F.3d at 1211-12.

The Commissioner argues that Ms. Lane cites to no binding authority which would preclude an ALJ from considering statements from examining or treating sources regarding how subjective symptoms appear to affect a claimant. (Doc. 9 at 15). This proposition arises from Ms. Lane's citation to *Moore*, 405 F.3d 1208 (citing *Stewart*, 245 F.3d 793) (Doc. 8 at 24-26). The Commissioner's position is that, in *Moore*, the Eleventh Circuit discusses *Stewart* as merely dicta and that because *Stewart* is a non-binding, unpublished opinion, Ms. Lane's reference to *Moore* (citing *Stewart*) is without merit. (Doc. 9 at 15-16). As previously discussed, the court acknowledges *Stewart v. Apfel* is a non-binding case in the Eleventh Circuit; however, the Commissioner failed to cite any binding authority contradicting *Stewart*. This court finds *Stewart* persuasive, as cited by *Moore*, in holding that fibromyalgia is a subjective impairment, undetected by ordinary objective measures. *Moore*, 405 F.3d at 1211-12.

Further, the Commissioner equates an ALJ's ability to consider a physician's statements regarding a claimant's appearance to permit the ALJ to rely upon a lack of objective findings in discrediting Ms. Lane's subjective pain testimony relating to fibromyalgia. (Doc. 9 at 15-16). The court finds that the Commissioner's reasoning

confuses the issue and is not relevant to the ALJ's error in relying upon objective medical evidence to discredit Ms. Lane's subjective symptoms.

Fibromyalgia's principal symptoms consist of "pain all over," fatigue, disturbed sleep, stiffness, and multiple tender spots. *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1249 (N.D. Ala. 2003) (citing *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996)). The impairment may be somewhat objectively verified by the presence of "tender areas" or "trigger points". *Id.* There are potentially 18 fixed locations on the body where an individual could exhibit this symptom. *Id.* Generally, the patient must have at least 11 of 18 specific tender areas to be diagnosed as having fibromyalgia. *Id*. Typically, sufficient clinical support is established for a fibromyalgia claim when a claimant exhibits "trigger points" and is prescribed injections to mitigate pain. *Bennett*, 288 F. Supp. 2d at 1250 (citing *Kelley v. Callahan*, 133 F.2d 583, 589 (8th Cir. 1998)). "[U]ndisputed evidence of the claimant's fibromyalgia and its attendant pain alone are substantial evidence of her disability under the Regulations." *Rutledge v. Barnhart*, 391 F. Supp. 2d 1057, 1060 (N.D. Ala. 2005).

Ms. Lane began seeking treatment for her pain and fatigue on September 30, 2009, from Dr. Warren Blackburn. (Tr. 528). Dr. Blackburn, a rheumatalogist, found 18 trigger points, diagnosed Ms. Lane with fibromyalgia, and prescribed sleep medication. (Tr. 529). Dr. Gene Watterson examined Ms. Lane on March 23, 2010,

and found at least 11 trigger points. (Tr. 586). Dr. Watterson concluded that Ms. Lane's symptoms were consistent with fibromyalgia. (Tr. 587). Ms. Lane was treated by Dr. Benjamin Wang on May 24, 2010. (Tr. 593). Dr. Wang concluded that Ms. Lane was experiencing widespread trigger points indicating fibromyalgia. (Tr. 596).

Dr. Scott Powers treated Ms. Lane between February 3, 2010, and August 9, 2010. (Tr. 609-631). Dr. Powers performed several blood tests and other medical scans; all producing normal results. (Tr. 630). Dr. Powers found multiple trigger points and concluded that Ms. Lane's condition was fibromyalgia and central sensitization syndrome. (Tr. 609). Ms. Lane was then referred to a neurological doctor, Dr. Chris LaGanke. (Tr. 635). After Dr. LaGanke's examination, on January 10, 2012, Ms. Lane was referred to Dr. Ann Still at the Alabama Pain Center for pain management therapy. (Tr. 740). Dr. Still has treated Ms. Lane for over two years beginning in January 2012, through September 27, 2014, and has concluded that Ms. Lane has positive trigger points in multiple locations. (Tr. 769, 775, 782, 789, 796, 801, 863). Thus, numerous treating physician evaluations in Ms. Lane's medical record clinically verify the presence and severity of her fibromyalgia impairment.

It is error for an ALJ to discredit a claimant's pain testimony by only focusing on evidence that supports a conclusion of not disabled. *Griffith v. Astrue*, No. 3:07-cv-247-J-MCR, 2008 WL 874872, at *10 (M.D. Fla. Mar. 27, 2008). The ALJ failed

to credit any of Ms. Lane's subjective symptoms from fibromyalgia and instead inadequately relied on objective findings of normal muscle tone, gait, stance, and walking ability to discredit her subjective pain and other disabling symptoms tied to fibromyalgia. (Tr. 25). As mentioned above, fibromyalgia is subjective in nature and thus expected to vary in the severity of symptoms. *Moore*, 405 F.3d at 1211. Ms. Lane experienced differing levels of pain and other symptoms, all of which are not unexpected or inconsistent with a fibromyalgia condition.

**B.    The ALJ's reliance upon Ms. Lane's medical treatment history was not adequate to discredit her subjective symptoms tied to fibromyalgia.**

The ALJ's opinion states that the medical record does not support finding that Ms. Lane complied with her treatment, implicitly including fibromyalgia. (Tr. 27). The ALJ reported that Ms. Lane failed to take her medication as prescribed, to maintain an exercise routine as recommended, and to consistently seek treatment. *Id.* The ALJ's credibility determination also pointed to an inconsistency between Ms. Lane's occasionally reporting positive responses to prescribed medication and her hearing testimony. (Tr. 27). Additionally, the ALJ cited examples of inconsistencies within Ms. Lane's medical regimen pertaining to several of her impairments. *Id.* However, the ALJ failed to clearly articulate specific inconsistencies to discredit Ms. Lane's fibromyalgia-related pain testimony. The ALJ's findings of inconsistent

compliance with medical treatment for Ms. Lane's colon and urinary problems, dysautonomia, asthma, and psychological issues, etc. are not relevant to the credibility of her pain testimony regarding fibromyalgia. (Tr. 27). The Commissioner cited no supporting case law or regulation that the ALJ may discredit a claimant's pain testimony with credibility-undermining evidence pertaining to <u>unrelated impairments</u>.

In addition to the ALJ's reference of inconsistencies that are unrelated to Ms. Lane's fibromyalgia-focused subjective testimony, Ms. Lane's credibility regarding her fibromyalgia claim is supported by an abundance of medical records. An unpublished panel of the Eleventh Circuit has held that a claimant's credibility is bolstered by evidence showing numerous doctor visits, medications prescribed, and numerous diagnostic tests endured. *See generally Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64-65 (11th Cir. 2010) (crediting the claimant's testimony when she consistently reported her symptoms and physicians consistently credited her condition) (citing *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 248 (6th Cir. 2007)). In contrast, an unpublished panel of the Eleventh Circuit has upheld adverse credibility findings when the evidence reflects periods of only sporadic medical treatment or limited use of prescribed medication. *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011).

Ms. Lane has seen and been examined by at least 13 physicians and other medical professionals either specifically for, or at least referencing, her impairment of fibromyalgia from September 2009 through September 2014. (*See* Tr. 361 (Ms. Lane's psychiatrist's referencing fibromyalgia on April 26, 2010)), (*see* Tr. 528 (Ms. Lane's rheumatologist's referencing fibromyalgia on October 20, 2009)), (*see* Tr. 584-88 (Ms. Lane's rheumatologist's referencing fibromyalgia on March 23, 2010)), (*see* Tr. 592-93 (Ms. Lane's pain management physician's referencing fibromyalgia on May 24-25, 2010)), (*see* Tr. 598-99 (Dr. Fredrickson's referencing Ms. Lane's fibromyalgia during sleep study)), (*see* Tr. 629-30 (Ms. Lane's psychiatrist's referencing fibromyalgia on February 3, 2010)), (*see* Tr. 635 (Ms. Lane's neurologist's referencing fibromyalgia on November 19, 2010)), (*see* Tr. 740-45 (Ms. Lane's visit to Alabama Pain Center on January 10, 2012, referencing fibromyalgia)).[6]

Throughout Ms. Lane's medical record, she has consistently reported symptoms of fibromyalgia and has been prescribed several pain medications by many doctors. (*See* Tr. 340, Tr. 341, Tr. 344, Tr. 347, Tr. 350-51, Tr. 366-67, Tr. 529, Tr. 585, Tr. 629, Tr. 731-32, Tr. 736, Tr. 738, Tr. 745, Tr. 866).[7] Ms. Lane's treating

---

[6] After review of the record, the court provides these references to the administrative record as an illustration of Ms. Lane's consistency in seeking treatment for fibromyalgia. This is not intended to be an exhaustive list.

[7] Once again, the court references the administrative record as an illustration of Ms. Lane's consistent complaining of symptoms and medications prescribed to her relating to

physicians consistently credited her reports of chronic pain. (*See* Tr. 361, Tr. 528, Tr. 584, Tr. 592-93, Tr. 598-99, Tr. 629, Tr. 635, Tr. 740).[8] Dr. Still prescribed pain medications and trigger point injections on many occasions to treat Ms. Lane's condition. (*See* Tr. 900-04 (Dr. Still prescribing Fentanyl and Lyrica on January 3, 2013, for Ms. Lane's fibromyalgia)), (*see* Tr. 906-09 (same on January 31, 2013)), (*see* Tr. 909-14 (Dr. Still prescribing block therapy and trigger point injections on February 15, 2013, for Ms. Lane's pain)), (*see* Tr. 917-22 (Dr. Still prescribing Fentanyl on March 28, 2013, for Ms. Lane's fibromyalgia)), (*see* Tr. 924-27 (same on May 1, 2013)), (*see* Tr. 928-32 (Dr. Still prescribing Ultram and Fentanyl on May 30, 2013, for Ms. Lane's pain)), (*see* Tr. 933-36 (Dr. Still prescribing Ultram, Fentanyl, and Lyrica on June 27, 2013, for Ms. Lane's pain)).[9]

Ms. Lane's medical treatment history is consistent with her subjective testimony associated with her fibromyalgia claim. As mentioned above, Ms. Lane was

---

fibromyalgia. This list is not intended to be an exhaustive list. The court has previously indicated what most of these transcript pages refer to. Additional pages likewise reflect Ms. Lane's referencing fibromyalgia symptoms.

[8] The court references the administrative record to illustrate consistent physician reports of positive findings crediting Ms. Lane's subjective pain. The pages previously explained along with additional pages, reflect treating physicians consistently crediting Ms. Lane's fibromyalgia symptoms. This list is not intended to be an exhaustive list.

[9] The court provides these references to the administrative record to illustrate instances when Dr. Still prescribed medications to treat Ms. Lane for pain caused by fibromyalgia. This is not an exhaustive list of Dr. Still's treatment records/medications prescribed to Ms. Lane.

diagnosed as suffering from fibromyalgia by several different medical providers. After being referred to Dr. Still for pain management, she was regularly examined by Dr. Still for fibromyalgia at least once per month from January 2012 through September 2014. (Doc. 8 at 13); (*see, e.g.*, Tr. 728-964).[10] Dr. Still's progress notes report that Ms. Lane complied with weekly medication and pain management classes. (Tr. 732, 736). Dr. Still's notes state that on several occasions Ms. Lane was compliant with all aspects of her medical care from May 2012 through 2013. (*See* Tr. 866 (Dr. Still's assessment that Ms. Lane "demonstrated compliance with all aspects of care"), Tr. 870 (same), Tr. 875 (same), Tr. 879 (same), Tr. 892 (same), Tr. 896 (same), Tr. 901 (same), Tr. 906(same), Tr. 923 (same), Tr. 924 (same), Tr. 928 (same), Tr. 933 (same), Tr. 937 (same), Tr. 958 (same)).[11] Dr. Still reported that Ms. Lane's urine drug screens were consistent with the medications prescribed by Dr. Still. (*See* Tr. 874 (Ms. Lane's drug screens ordered by Dr. Still, referencing the medications Ms. Lane was prescribed and her urine's consistency with those

---

[10] Ms. Lane was examined by Dr. Still many times. Dr. Still's evaluations and medical reports are comprised of more than 200 pages in the record. The court provides this reference to highlight the consistent longitudinal record of Ms. Lane's medical treatment from Dr. Still.

[11] The court references the administrative record to illustrate Ms. Lane's consistent compliance with her fibromyalgia treatment. This is not intended to be an exhaustive list of all of Dr. Still's reports of Ms. Lane's compliance.

medications), Tr. 900 (same), Tr. 923 (same), Tr. 942 (same), Tr. 964 (same)).[12]

The ALJ found that Ms. Lane was noncompliant with a doctor recommendation of daily exercise. (Tr. 27). This is a partial reading of the medical record. Dr. Still recommended tai chi and other exercise classes to Ms. Lane on June 27, 2013. (Tr. 936). On July 25, 2013, Ms. Lane reported to Dr. Still that her pain was lessened with rest and medication but not with exercise. (Tr. 937). Following this report, Dr. Still recommended that Ms. Lane discontinue attending exercise classes. (Tr. 941). Therefore, Ms. Lane's discontinuation of exercise classes was consistent with Dr. Still's subsequent recommendation. The ALJ did not reference any other instances in which Ms. Lane was noncompliant with Dr. Still's recommendations.

The court further finds that the ALJ's attempt to discredit Ms. Lane's credibility based upon purported discrepancies in her subjective pain testimony is inadequate because the contradiction expressly referenced by the ALJ is not supported by substantial evidence. More specifically, the ALJ indicated in her decision that "[t]reatment records also showed the claimant improved with her pain medication regimen and she reported she was happy with her treatment at times, [which were] inconsistent with her statement during the hearing that nothing had helped." (Tr. 27).

---

[12] The court references the administrative record to illustrate that Ms. Lane's drug screens were "consistent" with following her prescribed medications. This is not intended to be an exhaustive list of all drug screens relating to Ms. Lane.

While the ALJ is correct that Ms. Lane did, at times, report to Dr. Still that she was "happy" with her medications for fibromyalgia, noticeably absent is a page reference to the portion of the hearing transcript in which Ms. Lane testified that "nothing had helped." Further, the court has reviewed the transcript of Ms. Lane's oral testimony and finds that while Ms. Lane testified that certain medications–Lyrica and several others–"didn't help with the pain[,]" (Tr. 51), Ms. Lane indicated that using a Fentanyl patch and taking ibuprofen had helped to manage her fibromyalgia-related pain. (Tr. 50, 51); (*see* Tr. 51 ("The Fentanyl patch has been the best along with the Ibuprofen to take the edge off.")). Further, the court did not see where Ms. Lane ever testified during the hearing that no medications helped to ease her pain. (*See generally* Tr. 49-51). Therefore, the court finds that the ALJ's efforts to discredit Ms. Lane's credibility based upon inconsistent statements she supposedly made during the hearing about the medications used to manage her pain are unsubstantiated by the transcript and, therefore, inadequate.[13]

_____

[13] Alternatively, to the extent that Ms. Lane showed sporadic improvement in her level of pain with the use of a Fentanyl patch and ibuprofen, improvement of pain caused by medications alone does not equate to finding that a claimant is not disabled. *Cf. Stricklin v. Astrue*, 493 F. Supp. 2d 1191, 1197 (N.D. Ala. 2007) ("That the plaintiff's medications were helping relieve his symptoms does not follow to the ALJ's conclusion that the plaintiff's symptoms were reduced to the point were he could maintain full-time employment."). In any event, the ALJ did not rely upon Ms. Lane's reported non-linear and/or fluctuating improvement in managing her fibromyalgia symptoms as an explicit reason to discredit her credibility and, if the ALJ had, such reasoning would be inadequate.

The Commissioner argues that, when making a credibility determination, an ALJ may consider the treatment received by a claimant, along with the effectiveness of medication. (Doc. 9 at 17). The Commissioner cites *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 656-57 (11th Cir. 2013) (holding that substantial evidence supported credibility finding when ALJ found the objective medical records and the plaintiff's self-reports to her doctors were inconsistent with subjective complaints). In *Hernandez*, the court found no explanation in the record for how the claimant was able to walk normally and have no complaints of pain when visiting her neurological doctors, yet needed a wheelchair and complained of debilitating pain when seeing her orthopedic doctors. *Id.* at 657. The court finds a marked difference between the drastically inconsistent reports by the claimant in *Hernandez* and the facts of the present case.

Further, this court concludes that Ms. Lane's medical treatment history pertaining to fibromyaglia is internally consistent and is also consistent with her pain testimony given at the hearing. The ALJ's reliance upon such "inconsistencies" to discredit her subjective testimony related to fibromyalgia was inadequate.

**C.    The ALJ inadequately discounted Ms. Lane's credibility based upon her reported daily activities.**

The ALJ found that Ms. Lane's daily activities were not consistent with her

pain testimony caused by fibromyalgia. (Tr. 23). This determination was based upon

Ms. Lane's reported ability to:

> perform personal care without significant limitations, prepare simple meals, help her husband care for their children, drive short distances, shop in stores, do laundry, go outside two or three times a week, count change, handle a savings account, use a checkbook, etc.

*Id.* Ms. Lane's daily activities are not of a kind, intensity, or frequency to render them inconsistent with her pain testimony.

The Eleventh Circuit has held that a claimant's entire record must be considered when determining whether the claimant's daily activities are substantial enough to preclude finding a disability. *Foote*, 67 F.3d at 1561. For an ALJ to discredit a claimant's pain testimony based on daily activity, the ALJ should specifically illustrate how the claimant's daily activity is inconsistent with her subjective pain testimony. *Cf. Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007) ("Lanier explained that she performed household chores (such as doing laundry and vacuuming weekly), went fishing if someone else helped her to reel in the caught fish, drove short distances, did some cooking, engaged in online shopping, cut some parts of the flowers in her yard, and worked on redecorating her bedroom.").

General participation in everyday activities of short duration does not defeat

a disability claim. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (holding that a claimant's ability to perform housework or go fishing does not in itself disqualify a finding of disability); *see also Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (reversing ALJ's decision; claimant's ability to read, embroider, watch television, attend church, and drive short distances did not defeat a claim of hypertension). It is unnecessary for a claimant's pain to render her bedridden in order to uphold a disability claim. *Bennett*, 288 F. Supp. 2d at 1252. The key determination is whether the claimant's daily activity is performed at a duration, frequency, and intensity which specifically contradicts their supposed inability to engage in substantial gainful employment. *Id.*

The record confirms the ALJ's finding that Ms. Lane is able to perform some daily tasks. (Tr. 219-22). However, her medical record shows that she has substantial difficulty performing many tasks and is able to do so only when her symptoms permit. *Id.* For example, Ms. Lane often has help from her husband and children when preparing meals, shopping, or completing errands. *Id.* Additionally, to function while managing her pain, Ms. Lane is often required to shop only in stores of a particular size, wear her hair at an easy to manage length, and adjust meal preparation for herself and her family. *Id.* The ALJ failed to reference daily activities that illustrate an ability to engage in substantial gainful employment or that substantially contradict

Ms. Lane's pain testimony attributable to fibromyalgia.

Alternatively, to the extent the ALJ did reference daily activities of Ms. Lane that could partially support the ALJ's credibility determination, the Eleventh Circuit has made it clear that a claimant's daily activities cannot ever be the only basis for discrediting pain. *See Foote*, 67 F.3d at 1561 ("The ALJ's conclusion that Appellant's pain was not so disabling as to have significantly affected her residual functional capacity is not supported by substantial evidence in the record. His citation to Appellant's testimony as to her daily activities is not sufficient support for such conclusions."). Thus, this court alternatively concludes that regardless of the merit in the ALJ's reliance upon Ms. Lane's daily activities, without more, they are not sufficient to discredit Ms. Lane's subjective pain testimony. Further, the ALJ's other reasons offered to discredit Ms. Lane's disabling symptoms caused by fibromyalgia are inadequate as analyzed above.[14]

## II.    The ALJ's Limited Weight Given to Dr. Still's Medical Opinion Was Improper and Not Based on Substantial Evidence.

Treating physicians are commonly the most capable of providing a detailed, longitudinal record of the claimant's medical history. 20 C.F.R. § 404.1527. The

---

[14]   The court has not discussed every case cited by the Commissioner. Most of the Commissioner's authorities stand only for general propositions or are inapplicable to the contested issues in this appeal. The court has addressed any on-point cases cited or arguments made by the Commissioner that warrant further discussion.

opinion of a treating physician in regard to a longstanding patient may add a unique perspective that cannot be obtained from a non-examining physician. *Id.* In evaluating a medical source opinion, the ALJ must consider:

> length of treatment; frequency of evaluations; nature and extent of the treatment relationship; support of the source's opinion afforded by medical evidence; consistency of opinion with the record as a whole; and the specialization of the treating physician.

*Id.*

Dr. Still began treating Ms. Lane for pain management caused by fibromyalgia on January 10, 2012. (Tr. 740). Ms. Lane was examined and treated by Dr. Still at least once per month for more than two consecutive years. (Doc. 8 at 13); (*see, e.g.*, Tr. 728-964).[15] Dr. Still prescribed several medications throughout treatment, monitored Ms. Lane's symptoms, and concluded that Ms. Lane's condition was consistent with fibromyalgia. *Id.* As previously mentioned, the medical evidence supports a finding of fibromyalgia through multiple trigger points found by several treating physicians. Dr. Still is a physician who specializes in pain management at the Alabama Pain Center. (Tr. 740). Given this undisputed longitudinal history, Dr. Still qualifies as a treating physician for the purpose of providing medical opinion relevant

---

[15] Ms. Lane was examined by Dr. Still many times. Dr. Still's evaluations and medical reports are comprised of more than 200 pages in the record. The court provides this reference to highlight the consistent longitudinal record of Ms. Lane's medical treatment from Dr. Still.

to Ms. Lane's fibromyalgia claim.

Within the Eleventh Circuit the opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks omitted) (quoting *Lewis*, 125 F.3d at 1440). Good cause for affording only minimal weight to a treating physician's opinion exists when:

> (1) the treating physician's opinion [is] not bolstered by the evidence; (2) the evidence support[s] a contrary finding; or (3) the treating physician's opinion [is] conclusory or inconsistent with his or her own medical records.

*Phillips*, 357 F.3d at 1241 (citing *Lewis*, 125 F.3d at 1440). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *see also* 20 C.F.R. § 404.1527(c)(2) ("[The ALJ must] give good reasons in [the] determination or decision for the weight [given to] your treating source's opinion.").

When other evidence does not conclusively counter the opinion, and no other good cause is presented, the Commissioner cannot discount a treating doctor's opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987); *see also Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 418 (11th Cir. 2015) (reversing the ALJ's

decision stating (without identifying an specific contradictions) that a treating physician's opinion was contradicted by the doctor's own notes). *Borden v. Astrue* similarly held that the ALJ's mere conclusory rejection of a treating physician's opinion lacked good cause. 494 F. Supp. 2d 1278, 1283-84 (N.D. Ala. 2007). In *Borden*, the ALJ erred when he gave predominate weight, without good cause, to a state agency medical consultant who had never personally examined the claimant. *Id.*

In contrast, when an ALJ adequately states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no such error in giving limited weight to the opinion of a treating physician. *Moore*, 405 F.3d at 1212. An ALJ's decision to limit the weight of a treating physician's opinion will be upheld where the opinion is inconsistent with the record as a whole and if the claimant does not exhibit any of the standard symptoms of the impairment. *Harrison v. Comm. of Soc. Sec.*, 569 F. App'x 874, 878 (11th Cir. 2014).

Here, the ALJ has failed to articulate good cause for rejecting Dr. Still's medical opinion about Ms. Lane's fibromyalgia condition because the purported reasons relied upon by the ALJ are not substantiated by the record. The ALJ gave limited weight to Dr. Still's medical evaluation of Ms. Lane; Exhibit B29F. (Tr. 27). The ALJ listed a conclusion that Dr. Still's report was not supported by Ms. Lane's medical record, followed by a list of broad statements contradicting Dr. Still's report.

*Id.* The inconsistencies referenced by the ALJ were that:

> Ms. Lane was noncompliant with prescribed medications and exercise; diagnostic exams produced negative findings; when medication was taken as prescribed, Ms. Lane's condition improved, and; she did not seek consistent treatment for her colon problem.

(Tr. 27). Also, the ALJ gave predominate weight to the opinion of a non-examining, state agency medical consultant which contradicted the report of Dr. Still. (Tr. 26).

First, the ALJ failed to mention any specific dates or records indicating Ms. Lane's noncompliance with her medications and with exercise recommendations. As previously discussed, Dr. Still documented, on numerous occasions, Ms. Lane's urine analysis showing that she was consistently using her medications as prescribed. (Tr. 874, 896, 923, 937, 958, 964). Additionally, the court has already addressed the exercise issue and demonstrated why the ALJ incorrectly found Ms. Lane to be noncompliant with Dr. Still's recommendations concerning exercise.

Second, the ALJ referenced inconsistent diagnostic exams. (Tr. 27). As mentioned, fibromyalgia is not a condition that lends itself to the use of ordinary diagnostic medical procedures. *Moore*, 405 F.3d at 1211. Of the clinical measures taken to verify Ms. Lane's fibromyalgia claim, Dr. Still's findings of trigger points have been consistent with other treating physicians' opinions contained in the record.

Third, the ALJ found that Ms. Lane's improvement caused by medication was

inconsistent with Dr. Still's report. *Id.* Dr. Still did not indicate that Ms. Lane's condition was unimproved with the use of medication. Therefore, Ms. Lane's improvement is not inconsistent with Dr. Still's report. (Tr. 856-64). Lastly, Dr. Still reported that Ms. Lane consistently sought treatment for fibromyalgia. *Id.* Dr. Still did not speak to whether Ms. Lane was consistently being treated for unrelated impairments. *Id.* Therefore, the inconsistencies referenced by the ALJ pertaining to Ms. Lane's treatment for unrelated impairments are not relevant to the accuracy of Dr. Still's report.

Dr. Still is the only physician with a longstanding history of treating Ms. Lane's chronic pain. Thus, her medical opinion is entitled to deference concerning Ms. Lane's medical condition. The medical evidence within the record is consistent with Dr. Still's report and with Ms. Lane's fibromyalgia claim. The ALJ failed to identify specific contradictions to establish good cause for giving limited weight to Dr. Still's medical opinion and improperly discounted Dr. Still in favor of a non-examining medical consultant. Therefore, the ALJ committed reversible error in discounting Dr. Still's medical opinion.

**III.** **It Is Appropriate To Reverse the ALJ's Decision with Instructions To Award Benefits Because the Record Requires No Further Development and, Accepting Ms. Lane's Subjective Testimony and Dr. Still's Medical Opinion, Ms. Lane Is Disabled.**

The Eleventh Circuit has held that remanding a case with instructions to award benefits is appropriate where no new evidence is required to make a determination, and upon proper application of the correct legal standards, the claimant is entitled to benefits. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). In *Lewis v. Callahan*, the court reversed and awarded benefits where the requisite "good cause" did not exist for rejecting the opinions of the claimant's treating physicians. *See id.*, 125 F.3d at 1441 (holding that if when such opinions are given appropriate weight, the evidence strongly supports the claimant's position, awarding benefits is appropriate).

The undersigned has reversed and awarded benefits when, upon examination of the record, the ALJ gave improper weight to a treating physician's opinion without cause, arbitrarily rejected the claimant's testimony, and incorrectly applied the pain standard. *See generally Huguley v. Barnhart*, No. 2:05-CV-2113-VEH, (Doc. 10 at 11, 14, 18) (N.D. Ala. Jul. 18, 2006) (reversing and awarding benefits to claimant when ALJ incorrectly applied the pain standard and failed to give good cause for rejecting treating physician's opinion); *Sewell v. Barnhart*, No. 2:05-CV-0383-VEH,

(Doc. 11 at 11, 13, 16-17) (N.D. Ala. Jun. 8, 2006) (same).

Dr. Still's medical report indicated that Ms. Lane's condition would force her to miss work two or more days each month and that she would require unscheduled breaks in addition to ordinary morning, lunch, and afternoon break times. (Tr. 856-64). Vocational expert, Barbara Azzam, testified that an individual taking unscheduled breaks and days off in an amount that Dr. Still reported Ms. Lane's condition to require would be precluded from all substantial work activity. (Tr. 87). As found above, the ALJ did not articulate good cause for assigning only minimal weight to Dr. Still's opinion. Therefore, Dr. Still's medical opinion must be accepted as true. *Walden*, 672 F.2d at 839-40.

The Commissioner argues that if the court finds the ALJ failed to adequately limit the weight of a medical source opinion, the court must remand the case back to the ALJ to apply the proper legal standard. (Doc. 9 at 11). More particularly, the Commissioner indicates that, due to an intra-circuit split within the Eleventh Circuit, the court may not accept Dr. Still's medical opinion as true without remanding the issue. (Doc. 9 at 11) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982)).

However, after studying the decision in *Wiggins,* this court finds that it does not conflict with the earlier ruling in *Walden* and is inapplicable to this case. *Wiggins*

34

*v. Schweiker* held that when an ALJ makes no reference to the opinion of a treating physician, the court is unable to determine whether the ALJ applied proper legal standards and must remand the case for reconsideration of the opinion. 679 F.2d at 1390. In contrast, *Walden v. Schweiker* held that a treating physician's opinion is to be accepted as true without remand if an ALJ references the doctor's opinion in some capacity but does not correctly apply the law, erroneously evaluates the case, or fails to support his decision with substantial evidence. *Walden*, 672 F.2d at 839-40. Therefore, because the ALJ referenced Dr. Still's opinion (Tr. 27), but failed to satisfy the applicable legal standard in according limited weight to it, this court must accept Dr. Still's medical opinion as true without remand. *Walden*, 672 F.2d at 839-40.

Moreover, when considering the vocational expert testimony in conjunction with the import of Dr. Still's medical opinion, the record unambiguously establishes that Ms. Lane is disabled by her fibromyalgia and a remand for further development of the record is unnecessary. Thus, Ms. Lane is entitled to benefits as a matter of law due to the ALJ's lack of good cause in limiting the weight given to Dr. Still's opinion, and the ALJ's erroneous application of the pain standard with respect to Ms. Lane's severe impairment of fibromyalgia. *Huguley*, *supra*, (Doc. 10 at 18); *Sewell*, *supra*, (Doc. 11 at 16-17).

## <u>CONCLUSION</u>

Based upon this court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the record is fully developed and that the Commissioner did not apply proper legal standards in reaching her final decision. When the court applies the correct standard here, reversal is warranted with directions to award benefits. Accordingly, the decision will be reversed and remanded with such directions by separate order.

**DONE** and **ORDERED** this 28th day of June, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge